No. 23-2686

_____

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

HEIGHTS APARTMENTS, LLC,

Plaintiff – Appellant,

v.

TIM WALZ, in his official capacity as Governor of the State of Minnesota;
KEITH ELLISON, in his individual and his official capacity as Attorney General
of the State of Minnesota; and John Doe,

Defendants – Appellees.

_____

On Appeal from the United States District Court
for the District of Minnesota
Honorable Nancy Ellen Brasel, District Judge

_____

**APPELLANT'S OPENING BRIEF**
_____

J. DAVID BREEMER
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
JBreemer@pacificlegal.org

MICHAEL KEMP
Aaron Ferguson Law
2700 Snelling Avenue North
Suite 460
Roseville, Minnesota 55113
Telephone: (651) 493-0426
Michael@aaronfergusonlaw.com

*Attorneys for Plaintiff – Appellant Heights Apartments, LLC*

**SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT**

This case raises an issue of considerable importance: Whether the self-executing just compensation remedy for a taking, to which the state is subject under the Fourteenth Amendment, waives state sovereign immunity from a Fifth Amendment takings claim? This issue warrants oral argument, and Appellant hereby requests 20 minutes of oral argument.

Appellate Case: 23-2686     Page: 2     Date Filed: 09/21/2023 Entry ID: 5318784

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Plaintiff – Appellant Heights Apartments, LLC, a limited liability company organized under the laws of Minnesota, hereby states that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

/s/ J. David Breemer
J. DAVID BREEMER

ii

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ...........i

CORPORATE DISCLOSURE STATEMENT ..................................... ii

TABLE OF AUTHORITIES ............................................................v

JURISDICTIONAL STATEMENT ..................................................1

STATEMENT OF THE ISSUE.........................................................1

INTRODUCTION ..........................................................................1

STATEMENT OF THE CASE...........................................................3

    A.  The COVID Eviction Orders ...............................................3

    B.  The Impact of the Eviction Orders on Heights' Properties .........5

    C.  Prior Procedure.................................................................7

STANDARD OF REVIEW ..............................................................8

SUMMARY OF THE ARGUMENT ...................................................9

ARGUMENT ...............................................................................11

AS INCORPORATED IN THE FOURTEENTH AMENDMENT,
THE SELF-EXECUTING COMPENSATION REMEDY FOR
A TAKING OVERRIDES SOVEREIGN IMMUNITY ...................................11

    A.  Background Principles .......................................................11

    B.  The Due Process Clause of the Fourteenth Amendment Applied
the Just Compensation Requirement to the States and Abrogated
Sovereign Immunity...........................................................14

    C.  *Reich* Has No Relevance to the Just Compensation Clause .......17

iii

CONCLUSION .......................................................................................21

CERTIFICATE OF COMPLIANCE .......................................................22

CERTIFICATE OF SERVICE ...............................................................23

CERTIFICATE THAT DOCUMENT IS VIRUS FREE ........................24

Appellate Case: 23-2686    Page: 5    Date Filed: 09/21/2023 Entry ID: 5318784

# TABLE OF AUTHORITIES

## Cases

*ABF Freight System, Inc. v. International Broth. of Teamsters*,
645 F.3d 954 (8th Cir. 2011) ................................................................8

*Alden v. Maine*,
527 U.S. 706 (1999)................................................................12, 14–15

*Allen v. Cooper*,
555 F. Supp. 3d 226 (E.D.N.C. 2021) .....................................3, 16–17

*Barron v. City of Baltimore*,
32 U.S. 243 (1833)...............................................................................14

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021)..................................................................12–13

*Cent. Va. Cmty. College v. Katz*,
546 U.S. 356 (2006).............................................................................16

*Chicago, B. & Q.R. Co. v. City of Chicago*,
166 U.S. 226 (1897).............................................................................15

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999)...............................................................................2

*Edelman v. Jordan*,
415 U.S. 651 (1974).............................................................................11

*EEE Minerals, LLC v. North Dakota*,
--- F.4th ---, 2023 WL 5600296 (8th Cir. 2023).........................10, 18

*Esposito v. S.C. Coastal Council*,
939 F.2d 165 (4th Cir. 1991) ..............................................................10

*Ex parte Virginia*,
100 U.S. 339 (1879).............................................................................15

*Ex parte Young*,
209 U.S. 123 (1908).............................................................................12

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
454 U.S. 100 (1981).............................................................................19

v

*First English Evangelical Lutheran Church of Glendale v.*
   *County of Los Angeles*,
   482 U.S. 304 (1987)..............................................1–2, 10, 13, 17, 19

*Fitzpatrick v. Bitzer*,
   427 U.S. 445 (1976)........................................................16

*Ford Motor Co. v. Dep't of Treasury of Ind.*,
   323 U.S. 459 (1945)....................................................12, 18

*Hans v. Louisiana*,
   134 U.S. 1 (1890)............................................................12

*Heights Apartments, LLC v. Walz*,
   30 F.4th 720 (8th Cir. 2022) ..................................3–5, 7–8

*Hess v. Port Auth. Trans-Hudson Corp.*,
   513 U.S. 30 (1994)..........................................................12

*In re Venoco LLC*,
   998 F.3d 94 (3d Cir. 2021) .......................................15–16

*Jacobs v. United States*,
   290 U.S. 13 (1933)........................................................9, 14

*Knick v. Township of Scott*,
   139 S. Ct. 2162 (2019)........................ 1, 10–11, 13–14, 17–20

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005)....................................................18–19

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)....................................................13

*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*,
   496 U.S. 18 (1990)..........................................................17

*McKesson Corp. v. Islamic Republic of Iran*,
   539 F.3d 485 (D.C. Cir. 2008)....................................14

*Memphis & C. R. Co. v. Tennessee*,
   101 U.S. 337 (1879)........................................................16

*Milliken v. Bradley*,
   433 U.S. 267 (1977)........................................................12

vi

*Palazzolo v. Rhode Island,*
533 U.S. 606 (2001)............................................................13

*PennEast Pipeline Co., LLC v. New Jersey,*
141 S. Ct. 2244 (2021)........................................................16

*Phillips v. Washington Legal Foundation,*
524 U.S. 156 (1998)............................................................13

*Reich v. Collins,*
513 U.S. 106 (1994)..............................................11, 17–20

*Seven Up Pete Venture v. Schweitzer,*
523 F.3d 948 (9th Cir. 2008) ...............................................8

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.,*
560 U.S. 702 (2010)............................................................13

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
535 U.S. 302 (2002)........................................................9, 15

*Tyler v. Hennepin Cnty.,*
598 U.S. 631 (2023)............................................................18

*United States v. Clarke,*
445 U.S. 253 (1980).............................................13–14, 19–20

*United States v. Dickinson,*
331 U.S. 745 (1947)............................................................20

*United States v. Miller,*
317 U.S. 369 (1943)............................................................13

## Constitutions

U.S. Const. amend. XIV, § 1 .............................................14–15

U.S. Const. amend. XI .........................................................11

## Statutes

28 U.S.C. § 1291 ..................................................................1

28 U.S.C. § 1331 ..................................................................1

28 U.S.C. § 1341 ................................................................19

vii

Act of June 29, 2021, 2021 Minn. Laws 1st Spec. Sess. Ch. 8, art. 5 ......................7

## Other Authority

Berger, Eric, *The Collision of the Takings and State Sovereign Immunity Doctrines*, 63 Wash. & Lee L. Rev. 493 (2006) ...............................10

viii

## JURISDICTIONAL STATEMENT

This case involves federal constitutional issues. The district court had jurisdiction under 28 U.S.C. § 1331. The court issued a final judgment disposing of all claims on June 21, 2023. Appellant's Appendix (App.) 111, R. Doc. 86 at 1. The case was timely appealed on July 19, 2023. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the self-executing just compensation remedy for a taking, incorporated against the states through the Fourteenth Amendment, abrogates sovereign immunity from a Fifth Amendment takings claim? *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987), *and Knick v. Township of Scott*, 139 S. Ct. 2162 (2019).

## INTRODUCTION

This case arises from Appellees Minnesota Governor Tim Walz and Minnesota Attorney General Keith Ellison's (Officials) enforcement of a series of eviction moratoria that precluded Appellant Heights Apartments, LLC (Heights), from exercising its right to exclude nonpaying tenants, causing it to suffer a compelled physical occupation of its property. Heights sued, alleging in part that the eviction ban caused an unconstitutional taking of its property, in violation of the United States Constitution.

1

The district court originally dismissed Heights' takings claim on the merits. However, this Court subsequently reversed. On remand to the district court, the Officials filed a motion for judgment on the pleadings, arguing that sovereign immunity principles emanating from the Eleventh Amendment barred Heights' takings claim. The district court granted that motion, App. 111–26, R. Doc. 86 at 1–16, and Heights now appeals again, returning the case to this Court.

The district court erred in concluding that the state's sovereign immunity bars Heights' claim for just compensation for a taking. While the Eleventh Amendment generally precludes damages claims against the states, the Just Compensation Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, supplies a "self-executing" damages remedy for a taking. When Congress bound the states to the Just Compensation Clause remedy by enacting the Fourteenth Amendment's Due Process Clause, it necessarily carved out an exception to a state's sovereign immunity when it takes private property. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 316 n.9 (1987) (rejecting the United States' argument that sovereign immunity compels the conclusion that the Takings Clause does not provide a damages remedy); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 714, 717 (1999) ("Although the government acts lawfully when, pursuant to proper authorization, it takes property and provides just compensation, the government's

2

action is lawful solely because it assumes a duty, imposed by the Constitution, to provide just compensation.").

While adopting the straightforward logic of the Just Compensation Clause to find that takings claims are exempt from sovereign immunity may exacerbate a split among the courts, there is nothing wrong with being part of a conflict when the court is on the right side. The correct conclusion is that the incorporation of the just compensation requirement in the Fourteenth Amendment's Due Process Clause waived state sovereign immunity in takings cases, allowing property owners, like Heights, to sue the State when it takes property. *Allen v. Cooper*, 555 F. Supp. 3d 226, 239 (E.D.N.C. 2021) ("[T]he text of the Fifth Amendment seems to require the government to provide money damages despite any applicable sovereign immunity bars, and there is no Eleventh Amendment language requiring a different outcome.").

## STATEMENT OF THE CASE

### A.     The COVID Eviction Orders

In response to the COVID-19 crisis, Minnesota Governor Walz issued a series of executive orders related to housing: EOs 20-14, 20-73, and 20-79 (collectively, "EOs").[1] *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 724 (8th Cir. 2022). These

---

[1] The Governor issued additional, related executive orders extending the void emergency for additional thirty-day periods with Executive Order 20-35 on April 13, 2020, Executive Order 20-53 on May 13, 2020, Executive Order 20-75 on June 12,

3

orders were intended to keep tenants in rental units during the COVID emergency, regardless of their ability or willingness to pay rent. *Id.* at 724–25. The EOs halted a landlord's ability to file an eviction action under Minnesota Statutes 2019, section 504B.285 or 504B.291, or to terminate leases or decline to renew them for nonpayment and other lease breaches. *Id.* at 725. The only exceptions were when a tenant:

a. Seriously endangers the safety of other residents;

b. Violates Minnesota Statutes 2019, section 504B.171, subdivision 1;

c. Remains in the property past the vacate date after receiving a notice to vacate or nonrenewal under paragraph 4 of the Executive Order (which allows property owners to move family members into their property); or

d. Materially violates a residential lease by the following actions on the premises;

i. Seriously endangers the safety of others; or

ii. Significantly damages property.

*Heights*, 30 F.4th at 725.

The EOs imposed criminal and civil sanctions on landlords that tried to evict tenants or take other lease-terminating actions against tenants in violation of the orders. *Id.*

---

2020, Executive Order 20-78 on July 13, 2020, and Executive Order 20-83 on August 12, 2020. The last such order was Executive Order 20-89, issued September 11, 2020.

4

**B. The Impact of the Eviction Orders on Heights' Properties**

Heights Apartments, LLC, is a Minnesota limited liability company that owns multiple rental properties. *Heights*, 30 F.4th at 725. Heights derives its income from the rent generated from its properties.[2] The EOs significantly damaged Heights' rental business and income. During the COVID crisis, many of its tenants did not comply with their lease terms. These violations included failing to pay their rent in full and on time, interfering with management of the property, including the ability to comply with local ordinances and impairing the enjoyment of the properties for other tenants, causing tenant departures. *Id.* at 725. These lease-violating tenants would normally be subject to eviction, or at least, the termination of their tenancies at the end of the rental period. But due to the EOs, Heights could not evict or terminate the leases for noncompliant tenants. *Id.*

For example, on March 27, 2020, mere days after EO 20-14 went into effect, Heights closed on the sale of three properties from the same seller through a purchase contract which predated the EO. *Heights*, 30 F.4th at 725. The complaint refers to the properties as Property A,[3] Property B, and Property C. App. 017–19, R. Doc. 1

---

[2] This action was originally brought by Heights and Walnut Trails, LLLP, a Minnesota limited liability limited partnership that owns a 168-unit apartment project in Eagan, Minnesota. But Walnut Trails is no longer a party to this case.

[3] Property A is a four-unit building in Minneapolis entirely comprised of low-income tenants who receive subsidies for housing. These subsidies are provided by the

Appellate Case: 23-2686     Page: 14     Date Filed: 09/21/2023 Entry ID: 5318784

at 7–9. Property B is a seven-unit building in St. Paul, Minnesota, that has experienced significant problems. In Property B, only residents in two units have regularly paid rent since the EOs went into effect. Further, one resident became months behind on rent and has been operating a vehicle repair shop in the parking lot in violation of city ordinances. Heights has received an order to abate the nuisance from the City of St. Paul, but despite numerous warnings, the problem tenant has not complied. Another resident in Property B stopped paying rent when EO 20-14 went into effect, and had an unauthorized resident living on the property, in violation of the lease. These two tenants are so disruptive that they caused another tenant to move out, but Heights was hesitant to move another tenant in because of these problems. These tenant problems would normally be sufficient to terminate their leases, to decline to renew leases, or to file eviction actions, but these options became unavailable to Heights because of the EOs. App. 018, R. Doc. 1 at 8.

Property C, a six-unit building in Columbia Heights, has also experienced significant problems. In Property C, only three of the residents regularly paid rent during the COVID crisis. One resident had an unauthorized person living in the unit in violation of the lease, and stopped paying rent when EO 20-14 went into effect. He was also the subject of two nuisance letters from the City of Columbia Heights.

---

federal government, and Heights has had no issues with the tenancies at this Property.

6

On December 27, 2019, the City of Columbia Heights sent the previous property owner a notice demanding that this tenant's lease be terminated and eviction proceedings started, under threat of loss of the rental license. However, Heights was concerned that if the City is incorrect about the facts or if the tenant otherwise prevails, Heights could be subjected to civil and criminal penalties for evicting the tenant. App. 018–19, R. Doc. 1 at 8–9. These tenants' actions would normally be sufficient to terminate leases, not renew them, or to trigger eviction actions, but the EOs foreclosed these options. *Heights*, 30 F.4th at 725.

### C. Prior Procedure

Unable to enforce its leases against nonpaying, problem tenants, Heights filed suit. *Heights*, 30 F.4th at 725. Its complaint alleges, in part, that the EO's eviction restrictions amounted to a taking of its property because they compelled the physical occupation of its property by unwanted tenants. The Officials moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and for failure to state a claim. *Id.* The district court granted the motion, concluding that Heights failed to state viable claims. Heights appealed the district court's judgment to this Court. *See id*. While this initial appeal was pending in this Court, the Minnesota Legislature subsequently voided the EOs and enacted a new eviction moratorium. *See* Act of June 29, 2021, 2021 Minn. Laws 1st Spec. Sess. Ch. 8, art. 5 (the "Eviction Law").

7

This Court subsequently issued an opinion holding that Heights' claims were not mooted by the rescission of the EOs because Heights sought damages. *Heights*, 30 F.4th at 726. Reversing the district court's judgment of dismissal, this Court also held that Heights stated a valid per se takings claim against the eviction restrictions in the EOs. *Id.* at 733–35.

On remand, the Officials filed a motion for judgment on the pleadings. The motion asserted that sovereign immunity barred Heights' claim for just compensation for a taking of its property. On June 20, 2023, the district court granted the motion. App. 111–26, R. Doc. 86 at 1–16. In so doing, the court stated that it was "not persuaded by Heights Apartments' argument about the interplay between the Takings Clause's just-compensation requirement and Eleventh Amendment immunity." App. 118, R. Doc. 86 at 8. It further stated: "Federal courts have long held that the Eleventh Amendment prohibits property owners from filing federal-court actions seeking compensation from a state that has allegedly seized their property." *Id.* (citing *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 955 (9th Cir. 2008)). Heights now appeals this judgment.

## STANDARD OF REVIEW

This Court reviews a dismissal for lack of jurisdiction de novo. *ABF Freight System, Inc. v. International Broth. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011).

8

## SUMMARY OF THE ARGUMENT

The district court erred in holding that sovereign immunity bars Heights' takings claim because it failed to correctly apprehend the impact of the Fourteenth Amendment's imposition of the "just compensation" remedy for a taking on the State. To be sure, in most cases, the Eleventh Amendment and the Fifth Amendment's Just Compensation Clause function adequately and independently. However, when a state takes property without compensation, sovereign immunity and the Just Compensation Clause—applicable to states through the Fourteenth Amendment—conflict. While the former provision bars a suit for damages, the latter requires it.

The Just Compensation Clause prevails in this clash. The Supreme Court has repeatedly made clear that the Clause provides a "self-executing" damages remedy whenever the government takes private property, *Jacobs v. United States*, 290 U.S. 13, 16 (1933). While states were not originally bound by this just compensation requirement, this changed with the enactment of the Fourteenth Amendment. The Due Process Clause of that amendment, which forbids "states" from unconstitutionally depriving citizens of property, incorporates the just compensation remedy and applies it to the states. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 306 n.1 (2002) (stating that the Just Compensation Clause "applies to the States as well as the Federal Government"). Enactment of the

9

Fourteenth Amendment thus carved out an exception to the states' sovereign immunity for damages claims in the takings context.

The Officials will doubtless note that, in *EEE Minerals, LLC v. North Dakota*, --- F.4th ---, 2023 WL 5600296 (8th Cir. 2023), this Court recently rejected the contention that the Just Compensation Clause trumps sovereign immunity. However, the *EEE Minerals* decision is currently being contested by a Petition for Rehearing En Banc because its conclusion is wrong and inconsistent with Supreme Court precedent. The Just Compensation Clause itself gives a person the right to seek damages in federal court when the government takes property. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2172 (2019) ("[B]ecause a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time."). States are obligated to the just compensation remedy for a taking by the Due Process Clause. The only reasonable conclusion is that sovereign immunity is inapplicable to a claim that a state must pay for taking property. *First English*, 482 U.S. at 316 n.9; *see also Esposito v. S.C. Coastal Council*, 939 F.2d 165, 173 n.3 (4th Cir. 1991) (Hall, J., dissenting); Eric Berger, *The Collision of the Takings and State Sovereign Immunity Doctrines*, 63 Wash. & Lee L. Rev. 493, 519 (2006) ("[T]he straight textual argument seems to require the government to provide money damages [for a taking], notwithstanding otherwise applicable sovereign immunity bars.").

10

The Supreme Court's decision in *Reich v. Collins*, 513 U.S. 106, 108 (1994), is not to the contrary. Indeed, *Reich* is inapposite to the issue of whether the Just Compensation Clause overrides sovereign immunity. *Reich* states that sovereign immunity bars citizens from seeking a refund remedy in federal court under the Due Process Clause for unconstitutionally collected taxes, though that refund remedy is available in the states' own courts. This has no bearing on the sovereign immunity/just compensation issue here. *Reich* does not even address the question at hand: whether a constitutionally-mandated damages remedy that is *self-executing in federal court*, *Knick*, 139 S. Ct. at 2172, is exempt from sovereign immunity in that forum. *Reich*'s limited due process analysis hardly overrides Just Compensation Clause precedent demonstrating that the Fourteenth Amendment requires states to answer to takings claims.

## ARGUMENT

### AS INCORPORATED IN THE FOURTEENTH AMENDMENT, THE SELF-EXECUTING COMPENSATION REMEDY FOR A TAKING OVERRIDES SOVEREIGN IMMUNITY

#### A.     Background Principles

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although departing significantly from its

11

plain language, the Supreme Court has held that this Amendment generally bars all suits against a state entity absent the state's consent, *Hans v. Louisiana*, 134 U.S. 1, 21 (1890); *Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974), and specifically bars suits seeking damages from a state. *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) ("[T]he impetus for the Eleventh Amendment [is] the prevention of federal-court judgments that must be paid out of a State's treasury."). It applies in both federal and state courts. *Alden v. Maine*, 527 U.S. 706 (1999).

But there are exceptions. Sovereign immunity is inapplicable where "[t]he States have consented" to suit "pursuant to the plan of the [Constitutional] Convention or to subsequent constitutional Amendments." *Id.* at 755. Further, Section 5 of the Fourteenth Amendment allows Congress to enforce Fourteenth Amendment rights against states without respect to sovereign immunity, *id.* at 755–57, and in *Ex parte Young*, this Court recognized that a person may sue state officials for prospective relief from an ongoing violation of federal law. 209 U.S. 123 (1908); *see also Milliken v. Bradley*, 433 U.S. 267, 289–90 (1977).

While the Supreme Court has not explicitly held that the Just Compensation Clause operates as a planned exception to sovereign immunity, it has strongly suggested as much by repeatedly holding that property owners may sue states when they unconstitutionally take property. *See, e.g.*, *Cedar Point Nursery v. Hassid*, 141

12

S. Ct. 2063, 2069 (2021) (plaintiffs successfully sued state officials in federal court for a taking); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 163 (1998) (plaintiffs sued justices of the Texas Supreme Court, among others, in federal court for an unconstitutional taking); *see also Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 711–12 (2010) (adjudicating a takings claim against a state agency); *Palazzolo v. Rhode Island*, 533 U.S. 606, 615–16 (2001); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1009–10 (1992). Allowing takings suits against states without respect to sovereign immunity principles makes sense because the state suffers no net loss to its treasury by paying just compensation, which is the "equivalent in money of the property taken." *United States v. Miller*, 317 U.S. 369, 373 (1943).

More importantly, the Supreme Court has held that the Just Compensation Clause provides a damages remedy for a taking that is "self-executing" and actionable against all government entities subject to the Constitution. *First English*, 482 U.S. at 315–16; *Knick*, 139 S. Ct. at 2171 ("Because of 'the self-executing character' of the Takings Clause 'with respect to compensation,' a property owner has a constitutional claim for just compensation at the time of the taking." (quoting *First English*, 482 U.S. at 315)); *United States v. Clarke*, 445 U.S. 253, 257 (1980) ("A landowner is entitled to bring such an [inverse condemnation] action as a result of 'the self-executing character of the constitutional provision with respect to

13

compensation . . . .'" (citation omitted)). The self-executing nature of the Just Compensation Clause means that no legislation is needed for the just compensation remedy to be available to those who suffer a taking; the Constitution itself confers a right to seek just compensation in court for a taking. *Jacobs*, 290 U.S. at 16 (claims "based on the right to recover just compensation for property taken" do not require "[s]tatutory recognition" but are "founded upon the Constitution"); *Knick*, 139 S. Ct. at 2170 ("*Jacobs* made clear that, no matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it."); *cf. McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485 (D.C. Cir. 2008) (distinguishing between the Takings Clause, which comes with an inferred cause of action, and the Treaty of Amity, which does not).

**B.** **The Due Process Clause of the Fourteenth Amendment Applied the Just Compensation Requirement to the States and Abrogated Sovereign Immunit**y

As the foregoing shows, the Just Compensation Clause gives property owners a right to seek damages whenever government takes property without compensation, and this right adheres in federal court. *Knick*, 139 S. Ct. at 2171–73. Of course, the Just Compensation Clause originally applied only to the federal government. *Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833). But this changed with ratification of the Fourteenth Amendment, which specifically provides that "No State shall make

14

or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. The Amendment "fundamentally altered the balance of state and federal power" by "requir[ing] the States to surrender a portion of the sovereignty that had been preserved to them by the original Constitution." *Alden*, 527 U.S. at 756. Its provisions "were intended to be, what they really are, limitations of the power of the States," *Ex parte Virginia*, 100 U.S. 339, 345 (1879). "[A] State cannot disregard the limitations which the Federal Constitution has applied to her power. Her rights do not reach to that extent." *Id.* at 346.

Central to the Fourteenth Amendment's dilution of state power is the Due Process Clause and its command that states refrain from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Importantly for present purposes, the Due Process Clause incorporated the Fifth Amendment's Just Compensation Clause and its self-executing damages remedy for a taking. *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 239–41 (1897). Consequently, ratification of the Fourteenth Amendment subjected states to the Just Compensation Clause's requirement that government pay when taking property. *Tahoe-Sierra Pres. Council*, 535 U.S. at 306 n.1 (The Just Compensation Clause "applies to the States as well as the Federal Government."); *cf. In re Venoco LLC*, 998 F.3d 94, 110 (3d Cir. 2021) ("State sovereign immunity is a critical feature of

15

the U.S. Constitution, but it is not absolute. When they ratified the Constitution, states waived their sovereign immunity defense in bankruptcy proceedings[.]"); *Memphis & C. R. Co. v. Tennessee*, 101 U.S. 337, 339 (1879) ("Adjudication is of no value as a remedy unless enforcement follows."). Because the Fifth Amendment itself requires monetary "compensation" for every taking, and Congress adopted the Fourteenth Amendment and its incorporated just compensation remedy, the states necessarily waived their sovereign immunity to takings claims pursuant to "the constitutional plan." *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2262 (2021).

Consider Section 5 of the Fourteenth Amendment. Under that section, Congress may enforce constitutional guarantees against states by legislating a damages remedy for a violation, without violating sovereign immunity principles. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448–49, 456 (1976). Yet, if legislation creating a monetary remedy against Fourteenth Amendment-violating states overcomes sovereign immunity, *id.*, then certainly a just compensation remedy already embedded directly in the Fourteenth Amendment has the same effect. *See, e.g.*, *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 373–78 (2006) (Bankruptcy Clause provides a constitutionally grounded exception to sovereign immunity); *Allen*, 555 F. Supp. 3d at 236 (holding that *Knick* "decisively endorsed the decision in *First English*, including its statement that the Constitution, 'of its own force, furnish[es]

16

a basis for the court to award money damages against the government,'
notwithstanding principles of sovereign immunity" (quoting *Knick*, 139 S. Ct. at
2172)). Therefore, when the states were subjected to the Fourteenth Amendment and
its incorporated "self-executing" Just Compensation Clause remedy, property
owners harmed by a state taking acquired a right to seek compensation,
notwithstanding immunity. *First English*, 482 U.S. at 316 n.9; *Allen*, 555 F. Supp.
3d at 236–39.

### C.  *Reich* Has No Relevance to the Just Compensation Clause

In *EEE Minerals*, this Court concluded that the Supreme Court's decision in
*Reich* overrides the logic of the self-executing Just Compensation Clause, and
requires federal courts to apply sovereign immunity to bar takings claims. This was
a mistake. As a due process case dealing with a constitutional provision that, unlike
the Takings Clause, has never been self-executing in federal court, *Reich* is
inapposite.

*Reich* held that the Due Process Clause requires states to provide a refund
remedy in state courts when the state has unconstitutionally collected taxes. 513 U.S.
at 108–09; *see also McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496
U.S. 18, 32 (1990) (noting the "State's obligation to provide retrospective relief as
part of [a] postdeprivation procedure"). In so holding, *Reich* held that sovereign
immunity did not bar that remedy: "'a denial by a state court of a recovery of taxes

exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment,' the sovereign immunity States traditionally enjoy in their own courts notwithstanding." 513 U.S. at 109–10 (citation omitted). The *Reich* Court subsequently noted, in dicta, that "the sovereign immunity States enjoy in federal court, under the Eleventh Amendment, does generally bar tax refund claims from being brought in that forum." *Id.* at 110 (citing *Ford Motor Co.*, 323 U.S. 459).

Some circuit courts, including this one in the *EEE* decision, have concluded that *Reich* controls the issue of whether the Fourteenth Amendment-incorporated Just Compensation Clause abrogates sovereign immunity in federal court. *EEE Minerals*, --- F.4th ---, 2023 WL 5600296, at * 4. But it does not. *Reich* says nothing about the Takings Clause. It dealt only with the "recovery of taxes," and taxes are not takings. *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637 (2023). Moreover, the Takings Clause is not analogous to the Due Process Clause. The Supreme Court has repeatedly rejected the idea that takings questions can be resolved by due process analysis. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536–37, 541–42 (2005) (divorcing takings and due process principles; the "Takings Clause . . . 'is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a

18

taking'" (quoting *First English*, 482 U.S. at 315)); *Knick*, 139 S. Ct. at 2174 ("[T]he analogy from the due process context to the takings context is strained . . . .").

More specifically, there is a sharp distinction between the tax refund remedy available under the Due Process Clause and the Just Compensation Clause takings remedy, one that precludes an analogy between the provisions for purposes of sovereign immunity. The difference is that the due process tax refund remedy has never been held self-executing in federal court; it is only enforceable in *state* court. *Reich*, 513 U.S. at 109 ("a denial by a *state court* of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment" (emphasis added)); 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."); *see also*, *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 105 (1981) (holding tax claims non-justiciable in federal court).

Conversely, the Just Compensation Clause remedy *is* self-executing in *federal* court. *Knick*, 139 S. Ct. at 2172 ("[B]ecause a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a *federal* suit at that time." (emphasis added)); *Clarke*, 445 U.S. at 257 ("A landowner is entitled to bring such an [inverse condemnation] action as a result of

19

the self-executing character of the constitutional provision with respect to compensation." (quotation & citation omitted)); *United States v. Dickinson*, 331 U.S. 745, 748 (1947) ("But whether the theory of these suits be that there was a taking under the Fifth Amendment, and that therefore the Tucker Act may be invoked because it is a claim founded upon the Constitution, or that there was an implied promise by the Government to pay for it, is immaterial. In either event, the claim traces back to the prohibition of the Fifth Amendment . . . .").

Because the Due Process Clause tax refund remedy in *Reich* is not "self-executing" in federal court, *Reich*'s conclusion that sovereign immunity bars the remedy in federal court, but not in state court, is plausible. *Reich*, 513 U.S. at 110. But the same reasoning cannot be applied to the Just Compensation Clause because its damages remedy *is* self-executing in federal court. *Knick*, 139 S. Ct. at 2171–73. In short, *Reich* simply does not address the issue here: whether a constitutionally mandated damages remedy that binds the state through the Fourteenth Amendment *and is self-executing in federal court* overrides the state's sovereign immunity in federal court. The Court should resolve this case pursuant to core constitutional principles, such as the Fourteenth Amendment's imposition of the just compensation obligation on states, not by inapposite due process tax refund precedent.

## CONCLUSION

The Court should reverse the judgment below and remand for further proceedings.

DATED: September 21, 2023.

Respectfully submitted,

J. DAVID BREEMER
MICHAEL KEMP

/s/ J. David Breemer
J. DAVID BREEMER

*Attorneys for Plaintiff – Appellant*
*Heights Apartments, LLC*

21

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,755 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word O365 in 14-point Times New Roman font.

**Signature** /s/ J. David Breemer    **Dated:** September 21, 2023.
     J. DAVID BREEMER

Appellate Case: 23-2686  Page: 31  Date Filed: 09/21/2023 Entry ID: 5318784

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ J. David Breemer
J. DAVID BREEMER

Appellate Case: 23-2686    Page: 32    Date Filed: 09/21/2023 Entry ID: 5318784

**CERTIFICATE THAT DOCUMENT IS VIRUS FREE**

I hereby certify that on September 21, 2023, this document was scanned for viruses using Symantec and is virus free.

/s/ J. David Breemer
J. DAVID BREEMER

24

Appellate Case: 23-2686     Page: 33     Date Filed: 09/21/2023 Entry ID: 5318784