No. 23-2686
<hr>

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

HEIGHTS APARTMENTS, LLC,

Appellant,

vs.

TIM WALZ, in his official capacity as Governor of the State of Minnesota;
KEITH ELLISON, in his individual and his official capacity as Attorney General
of the State of Minnesota

Appellees.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
HONORABLE NANCY ELLEN BRASEL, DISTRICT JUDGE**

_____

**APPELLEES' RESPONSE BRIEF**

_____

J. DAVID BREEMER
Pacific Legal Foundation
555 Capital Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
JBreemer@pacificlegal.org

MICHAEL KEMP
Aaron Ferguson Law
2700 Snelling Avenue North,
Suite 460
Roseville, Minnesota 55113
Telephone: (651) 493-0426

KEITH ELLISON
Attorney General
State of Minnesota

LIZ KRAMER
Solicitor General
Atty. Reg. No. 0325089

MICHAEL GOODWIN (#3090244)
Assistant Attorneys General

445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131

[Michael@aaronfergusonlaw.com](mailto:Michael@aaronfergusonlaw.com)

ATTORNEYS FOR APPELLANT

Telephone: (651) 757-1218
Fax: (651) 282-5832
liz.kramer@ag.state.mn.us
michael.goodwin@ag.state.mn.us

ATTORNEY FOR APPELLEES

## SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

Appellant Heights Apartments, LLC ("Heights") seeks an award of money damages against Appellees Minnesota Governor Tim Walz and Attorney General Keith Ellison in their official capacities. Time and time again, this Court has followed the U.S. Supreme Court in holding that the Eleventh Amendment bars such claims. As Heights acknowledges, this Court's most recent case rejecting this theory was issued in August of 2023, joining every federal appeals court to have considered the issue. Heights offers no persuasive reason for this Court to break new ground.

Because the legal issues in this case are simple, straightforward, and controlled by precedent, Appellees believe 10 minutes of oral argument is sufficient.

i

# TABLE OF CONTENTS

**Page**

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT ....................i

TABLE OF AUTHORITIES ......................................................................iii

STATEMENT OF ISSUE...........................................................................1

STATEMENT OF THE CASE.....................................................................2

I. THE STATE OF MINNESOTA RESPONDS TO AN UNPRECEDENTED PUBLIC HEALTH CRISIS. ...............................................................................2

II. GOVERNOR WALZ TEMPORARILY LIMITED EVICTIONS TO REDUCE SPREAD OF VIRUS.................................................................................3

III. ON REMAND, THE DISTRICT COURT GRANTS APPELLEES JUDGMENT ON THE PLEADINGS ON HEIGHTS' REMAINING CLAIMS. ........................5

SUMMARY OF ARGUMENT ...................................................................7

ARGUMENT .............................................................................................7

I. HEIGHTS' CLAIMS AGAINST APPELLEES IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT. ..............................7

II. THE FOURTEENTH AMENDMENT DID NOT ABROGATE THE STATE'S SOVEREIGN IMMUNITY....................................................................12

III. HEIGHTS' ARGUMENT THAT ITS DAMAGES CLAIM WAS BROUGHT "DIRECTLY" UNDER THE FIFTH AMENDMENT IS BOTH FORFEITED AND UNSUPPORTED. ...............................................................................15

CONCLUSION.........................................................................................17

APPELLEES' APPENDIX............................................ Appellees' Appendix 1 – 25

Appellate Case: 23-2686    Page: 4    Date Filed: 10/24/2023 Entry ID: 5328898

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Alden v. Maine*,
527 U.S. 706 (1999) .................................................................. 1, 7, 8, 14

*Allen v. Cooper*,
140 S. Ct. 994 (2020) ......................................................................... 1, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 5

*Church v. Missouri*,
913 F.3d 736 (8th Cir. 2019) .................................................... 11, 12, 14

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ......................................................................... 9, 14

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999) ............................................................................. 12

*Coleman v. Ct. of Appeals of Maryland*,
566 U.S. 30 (2012) ............................................................................... 14

*Devillier v. Texas*,
22-913 --- S. Ct. ----, 2023 WL 6319651 (Sept. 29, 2023)................... 17

*EEE Mins., LLC v. State of N. Dakota.*,
81 F.4th 809 (8th Cir. 2023) ............................................... 1, 9, 10, 11

*Fitzpatrick v. Bitzer*,
427 U.S. 445, (1976) ............................................................................ 13

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
527 U.S. 627 (1999) ............................................................................... 9

Appellate Case: 23-2686     Page: 5     Date Filed: 10/24/2023 Entry ID: 5328898

*Gibson v. Ark. Dep't of Corr.*,
 265 F.3d 718 (8th Cir. 2001)................................................................ 9

*Glasgow v. Nebraska*,
 819 F.3d 436 (8th Cir. 2016) ............................................................. 17

*Heights Apartments, LLC v. Walz*,
 30 F.4th 720 (8th Cir. 2022) ................................................................ 6

*Heights Apartments, LLC v. Walz*,
 39 F.4th 479 (8th Cir. 2022) ................................................................ 6

*Hernandez v. Mesa*,
 140 S. Ct. 735 (2020) ........................................................................ 17

*Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
 847 F.3d 594 (8th Cir. 2017)............................................................... 15

*Johnson v. City of Shelby, Miss.*,
 574 U.S. 10 (2014) ............................................................................. 17

*Kentucky v. Graham*,
 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)......................... 8

*Klingler v. Dir., Dep't of Revenue, State of Mo.*,
 455 F.3d 888 (8th Cir. 2006)............................................................... 13

*Knick v. Township of Scott*,
 139 S. Ct 2162 (2019). .................................................................. 11, 16

*Kruger v. Nebraska*,
 820 F.3d 295 (8th Cir. 2016)............................................................ 8, 9

*Mader v. United States*,
 654 F.3d 794 (8th Cir. 2011)............................................................... 10

*Maine Cmty. Health Options v. United States*,
 140 S. Ct. 1308 (2020) ....................................................................... 16

Appellate Case: 23-2686   Page: 6   Date Filed: 10/24/2023 Entry ID: 5328898

*Montgomery v. City of Ames,*
   829 F.3d 968 (8th Cir. 2016)................................................................ 9

*Pharm. Rsch. & Manufacturers of Am. v. Williams,*
   64 F.4th 932 (8th Cir. 2023) .............................................................. 11

*Quern v. Jordan,*
   440 U.S. 332 (1979) ....................................................................... 9, 13

*Reich v. Collins,*
   513 U.S. 106 (1994) ..................................................................... 10, 11

*S & M Brands, Inc. v. Cooper,*
   527 F.3d 500 (6th Cir. 2008)............................................................. 11

*Seminole Tribe of Fla. v. Fla.,*
   517 U.S. 44 (1996) ............................................................................ 13

*Seven Up Pete Venture v. Schweitzer,*
   523 F.3d 948 (9th Cir. 2008)........................................................... 9, 11

*Singer v. Harris,*
   897 F.3d 970 (8th Cir. 2018)............................................................... 9

*Skatemore, Inc. v. Whitmer,*
   40 F.4th 727 (6th Cir. 2022) ........................................................ 12, 15

*Smith v. Kentucky,*
   36 F.4th 671 (6th Cir. 2022) ................................................. 12, 13, 17

*Torres v. Texas Dep't of Pub. Safety,*
   142 S. Ct. 2455 (2022) ..................................................................... 14

*United States v. Nunez-Hernandez,*
   43 F.4th 857 (8th Cir. 2022) ............................................................ 16

*Virginia Off. for Prot. & Advoc. v. Stewart,*
   563 U.S. 247 (2011) ....................................................................... 8, 9

Appellate Case: 23-2686   Page: 7   Date Filed: 10/24/2023 Entry ID: 5328898

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) .................................................................................... 17

*Wright-Gottshall v. New Jersey*,
  No. 3:21-CV18954-PGS-DEA 2023 WL 3183288 (D.N.J. May 1, 2023) ......... 15

*Zito v. N. Carolina Coastal Res. Comm'n*,
  8 F.4th 281 (4th Cir. 2021) ............................................................... 9, 11

**Federal Statutes**

42 U.S.C. § 1983 ...................................................................... Passim

**State Statutes**

Act of June 29, 2021, ch. 8, art. 5, §§ 1-4, 2021 Minn. Laws 1st Spec. Sess .......... 4

Act of June 30, 2021, ch. 12, art. 2, § 23, 2021 Minn. Laws 1st Spec. Sess............ 5

**Federal Constitutional Provisions**

U.S. Const. Amend. XI ............................................................... Passim

U.S. Const. Amend. XIV .............................................................. Passim

**Federal Regulations**

*Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19*,
  85 Fed. Reg. 55292 (Sept. 4, 2020) ..................................................... 3

vi

## STATEMENT OF ISSUE

The Eleventh Amendment prohibits federal lawsuits against non-consenting states (and state actors in their official capacities) unless Congress has validly abrogated sovereign immunity. Appellant Heights Apartments, LLC ("Heights") sued Minnesota Governor Tim Walz and Minnesota Attorney General Keith Ellison in their official capacities, claiming damages under the Takings Clause arising from issuance of executive orders designed to minimize the spread of the deadly COVID-19 virus. Are Heights' claims barred by sovereign immunity?

**Apposite authorities**:

U.S. Const. Amend. XI

*Allen v. Cooper*, 140 S. Ct. 994 (2020)

*Alden v. Maine*, 527 U.S. 706 (1999)

*EEE Mins., LLC v. State of N. Dakota*. 81 F.4th 809 (8th Cir. 2023)

1

# STATEMENT OF THE CASE

## I. THE STATE OF MINNESOTA RESPONDS TO AN UNPRECEDENTED PUBLIC HEALTH CRISIS.

It is undisputed that COVID-19 created a public health crisis and caused adverse impacts on many, if not all, Minnesotans. (App. 11, R. Doc. 1.) In response to the COVID-19 public health crisis, Governor Walz issued a peacetime emergency declaration on March 13, 2020. (App. 13, R. Doc. 1, ¶ 8.) *See also* Emergency Executive Order ("Emergency EO" or "EO") 20-01.[1] Minnesota engaged in a comprehensive plan to combat COVID-19 aimed at slowing the spread of the disease, protecting the capacity of the State's medical system to respond to the disease, and ensuring the continued operation of critical sectors to protect the public's access to necessary services and supplies. *See*, *e.g.*, Emergency EOs 20-02 through 20-63, 20-66, 20-70, 20-73 through 20-76, 20-78 through 20-86, 20-89, 20-92, 20-94 through 20-107, 21-01 through 21-04, 21-07, 21-11, 21-12, 21-15, 21-16, 21-17, 21-19, 21-21, 21-22, 21-23, and 21-24. (*See also* App. 13, R. Doc. 1, ¶ 9.)

Both the pandemic and the government response are events without precedent in at least the last century and perhaps in recorded history. Indeed, Heights says in its Complaint that it "fully recognize[s] the depths of the crisis facing the State, while

---

[1] All of Minnesota's Emergency Executive Orders regarding COVID-19 are available online at https://www.leg.state.mn.us/lrl/execorders/eoresults?gov=44 (last visited Oct. 23, 2023) [PERMA: https://perma.cc/EV34-32NG].

2

also recognizing the hundreds of billions of dollars the state and federal governments have invested in ensuring that citizens are able to provide for necessities for themselves and their families, including for housing."  (App. 29, R. Doc. 1.)

## II. GOVERNOR WALZ TEMPORARILY LIMITED EVICTIONS TO REDUCE SPREAD OF VIRUS.

Like the federal government and many state and local governments, Minnesota temporarily limited the ability of residential property owners to evict tenants.  *See, e.g., Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55292, 55292-95 (Sept. 4, 2020).  On March 23, 2020, Governor Walz issued Emergency EO 20-14.  (App. 14, R. Doc. 1, ¶ 13; App. 31-41, R. Doc. 1-1, 2, 3.)  Recognizing the economic consequences of the pandemic as well as the connection between housing stability and control of community spread of the virus, EO 20-14 temporarily limited the circumstances in which property owners could terminate residential leases or use the statutory eviction procedure.  (App. 31-33, R. Doc. 1-1.)  Noting similar measures by the federal government and at least two dozen other states, the Governor stated:

> [p]ublic health and safety are promoted by stabilizing households which, through no fault of their own, may suddenly have the inability to afford rent.  Providing a temporary moratorium on eviction actions allows these households to remain stably housed as they safeguard the health of themselves, their families, and other Minnesotans.

(App. 32, R. Doc. 1-1 at 2.)

EO 20-14 authorized eviction cases in which the tenant "seriously endangered

3

the safety of other residents" or engaged in illegal activity related to drugs, firearms, prostitution, or stolen goods on the property. *Id.* EO 20-14 specifically provided that it did not affect a tenant's continuing obligation to pay rent. *Id.* On June 5, 2020, the Governor issued Emergency EO 20-73 to clarify that evictions were also authorized in "situations where a tenant seriously endangers the safety of others who are not residents." (App. 35-37, R. Doc. 1-2.)_

On July 14, 2020, Governor Walz issued Emergency EO 20-79, which rescinded EO 20-14 and EO 20-73 and took effect on August 4, 2020. (App. 38, R. Doc. 1-3.) EO 20-79 created additional exceptions to the eviction moratorium, including an exception for when a tenant violates a lease by "significantly damag[ing] the property." (*Id.*). EO 20-14, 20-73, and 20-79 are collectively referred to herein as the "Orders."[2]

In June 2021, Governor Walz and the Legislature agreed to a phaseout of these emergency eviction restrictions. *See* Act of June 29, 2021, ch. 8, art. 5, §§ 1-4, 2021 Minn. Laws 1st Spec. Sess. Separately, the Orders became null and void when Governor Walz and the Legislature reached an agreement ending Governor Walz's COVID-19 peacetime emergency declaration, effective July 1, 2021. *See* Act of

---

[2] One researcher estimated that that the Orders saved 2,040 lives and prevented 111,000 COVID-19 infections through January 4, 2021. Larry McDonough, Pandemic Eviction Claims and Defenses and Other Housing Claims in Minnesota, p. 28 (updated and revised February 2022) (available at PERMA: https://perma.cc/9AST-QD33 (last visited Oct. 23, 2023).

4

June 30, 2021, ch. 12, art. 2, § 23, 2021 Minn. Laws 1st Spec. Sess.  Meanwhile, the State made hundreds of millions of dollars in rental assistance available to Minnesota tenants and landlords.  *See RentHelpMN Dashboard*, Minnesota Housing Finance Agency, https://www.mnhousing.gov/renthelpmn/renthelpmn-dashboard.html  (last visited Oct. 21, 2023) [PERMA: https://perma.cc/B5TU-UVR3].

## III.    ON REMAND, THE DISTRICT COURT GRANTS APPELLEES JUDGMENT ON THE PLEADINGS ON HEIGHTS' REMAINING CLAIMS.

Heights and another landlord sued Governor Walz and Attorney General Ellison[3] in September 2020, seeking to enjoin the Orders and to recover money damages for alleged harm.  (App. 11, R. Doc. 1.)  Heights pleaded substantive claims under the Petition Clause of the First Amendment, the Contracts Clause, the Takings Clause, and the Due Process Clause of the Fourteenth Amendment, as well as separate counts for allegedly "ultra vires acts" under state law, for violations of 42 U.S.C. § 1983, and for declaratory judgment.  (App. 11-30, R. Doc. 1.)  The district court dismissed all of the claims and denied the Landlords' request for an injunction as moot.  (App. 42-84, R. Doc. 37.)

---

[3] Heights Complaint contains no allegation that Attorney General Ellison took any action related to their properties.  This is a separate reason to affirm the dismissal of claims against Attorney General Ellison.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

Heights appealed without the other landlord. This Court affirmed in part and reversed in part. First, the Court dismissed as moot Heights' claims for declaratory and injunctive relief because the Orders had been voided by legislation signed into law by the Governor. *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 726 (8th Cir. 2022). The Court also affirmed the dismissal of Heights' claims under the Petition Clause and the Due Process Clause. *Id*. at 732, 735-36. Departing from the district court, the Court held that Heights had pleaded viable claims for physical and regulatory takings, relying on U.S. Supreme Court case law issued after the Orders were set to expire. *Id*. at 734-35.

The Eighth Circuit later denied Defendants' petition for rehearing en banc, with four of the court's 11 active judges voting to grant the petition. *Heights Apartments, LLC v. Walz*, 39 F.4th 479 (8th Cir. 2022) (mem.). Dissenting from the denial of rehearing, Judge Colloton criticized the panel decision for misreading Supreme Court precedent and for being "an outlier among federal courts." *Id*. at 481 (Colloton, J., dissenting).

On remand, Appellees moved for judgment on the pleadings on Heights' remaining claims for money damages. (Add. 03-18.) The district court agreed that Heights' official capacity claims were barred by sovereign immunity and its individual capacity claims were barred by qualified immunity. (Add. 08-10; App.

6

117-124; R. Doc. 86.) Heights appeals only as to its takings claim against Appellees in their official capacities.

## SUMMARY OF ARGUMENT

The district court properly granted Appellees' motion for judgment on the pleadings. This Court has repeatedly, and recently, held that the Eleventh Amendment bars claims against state officials sued in their official capacity, including takings claims. Heights asks the Court to reject this precedent (and the overwhelming weight of authority) to chart a new path. But it gives the Court no good reason to do so, especially given that this Court and most others have rejected its arguments about the "self-executing" nature of the Fifth Amendment and Fourteenth Amendments. Heights also attempts to recast its damages claim as a direct action under the Fifth Amendment instead of the § 1983 action in its Complaint, an argument this Court should reject on both procedural and substantive grounds. The Court should affirm the district court's grant of judgment on the pleadings.

## ARGUMENT

### I. HEIGHTS' CLAIMS AGAINST APPELLEES IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT.

"The generation that designed and adopted our federal system considered immunity from private suits central to sovereign dignity." *Alden v. Maine*, 527 U.S. 706, 715 (1999). The Eleventh Amendment states that "[t]he Judicial power of the

7

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Quickly adopted in the wake of the Supreme Court's "profound[ly] shock[ing]" decision in *Chisolm v. Georgia*, the Eleventh Amendment was intended to undo *Chisholm* as well as "to preserve the States' traditional immunity from private suits." *Alden*, 527 U.S. at 724 (1999).

Consistent with this historical understanding, the U.S. Supreme Court has interpreted the Eleventh Amendment to mean "a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020). This includes claims against State officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).

Sovereign immunity bars suits against non-consenting states even when constitutionally-protected property rights are at issue. *Allen*, 140 S. Ct. at 1003 (holding that sovereign immunity barred copyright infringement lawsuits against states); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S.

8

627, 640 (1999) (holding that sovereign immunity barred patent infringement lawsuits against states). This Court has routinely applied these principles to bar suits against states, most recently in *EEE Minerals, LLC v. State of N. Dakota*, 81 F.4th 809, 815 (8th Cir. 2023) (citing *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)). *See also, e.g., Singer v. Harris*, 897 F.3d 970, 976 (8th Cir. 2018); *Kruger*, 820 F.3d at 301; *Montgomery v. City of Ames*, 829 F.3d 968, 973 (8th Cir. 2016) ("[T]he State and its agencies are immune from suits for damages.") (citing *Quern v. Jordan*, 440 U.S. 332, 337 (1979)); *Gibson v. Ark. Dep't of Corr.*, 265 F.3d 718, 720 (8th Cir. 2001).

Heights acknowledges these universally-recognized rules of law, but still maintains that the "self-executing" nature of the Fifth Amendment overrides sovereign immunity. (App. Br. 12-14.) As Heights also acknowledges, the Eighth Circuit has joined every other circuit that has considered the issue in rejecting that argument. *EEE Mins.*, 81 F.4th at 816-17; *Zito v. N. Carolina Coastal Res. Comm'n*, 8 F.4th 281, 285 (4th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 283, 142 S. Ct. 465 (2021) (rejecting argument that Fifth Amendment "exempts takings claims from the strictures of sovereign immunity" because it is "self-executing"); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 955 (9th Cir. 2008) (agreeing with every circuit that has addressed the issue that Eleventh Amendment bars reverse condemnation actions against state officials in federal court).

9

In the most recent pronouncement from this Court, the plaintiff in *EEE Minerals* brought a takings claim against the State of North Dakota and several officials in their official capacities. *EEE Mins.*, 81 F.4th at 812. Citing the decisions of seven other circuits, the *EEE Minerals* court held that the Eleventh Amendment bars suit against a state in federal court even if the Fifth Amendment is self-executing. at 815-16. Although a petition for rehearing *en banc* has been filed in *EEE Minerals*, that decision remains binding precedent unless and until overruled by this Court *en banc* or abrogated by the U.S. Supreme Court. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (noting "cardinal rule" that one panel is bound by decision in prior panel).[4]

Furthermore, the Supreme Court's characterization of the Takings Clause as "self-executing" cannot be understood to abrogate sovereign immunity, as the Supreme Court has said the same about "[t]he first eight Amendments to the Constitution." *City of Boerne v. Flores*, 521 U.S. 507, 524 (1997). Indeed, in *Reich v. Collins*, the Supreme Court explained that the Eleventh Amendment generally bars tax refund claims in federal court even though there is a self-executing right to a refund under the Fourteenth Amendment. 513 U.S. 106, 111-14 (1994). As

---

[4] This Court's prior ruling that the Orders violate the Takings Clause remains binding, and is treated as such in this brief. Appellees nevertheless believe that decision was incorrectly decided and reserve the right to litigate these substantive constitutional issues in any further appeals.

Appellate Case: 23-2686     Page: 18     Date Filed: 10/24/2023 Entry ID: 5328898

Heights acknowledges, *Reich* has since been cited in multiple circuits for the proposition that sovereign immunity bars claims against states in federal court, whether under the Takings Clause or other constitutional provisions. *EEE Mins.*, 81 F.4th at 816; *Church v. Missouri*, 913 F.3d 736, 746 (8th Cir. 2019); *Zito*, 8 F.4th at 285; *Seven Up*, 523 F.3d at 955; *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 512 (6th Cir. 2008). These cases dictate that Appellees are entitled to sovereign immunity here, requiring affirmance of the district court's judgment.

Heights incorrectly attempts to distinguish *Reich* based on *Knick v. Township of Scott*'s characterization of the Fifth Amendment's takings remedy, but the Eighth Circuit has twice rejected the assertion that *Knick* affected the Eleventh Amendment analysis. *EEE Mins.*, 81 F.4th at 815-16; *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 949 (8th Cir. 2023), *pet. rehearing denied*, 2023 WL 3313605 (8th Cir. May 9, 2023). *Knick* was a Section 1983 claim against a town and therefore did not address sovereign immunity. *EEE Mins.*, 81 F.4th at 815-16. Contrary to Heights' argument, the Supreme Court has not "strongly suggested" a takings exception to sovereign immunity; none of the cases Heights cites addressed sovereign immunity. (App. Br. at 12-13.) *Cedar Point Nursery*, for example, sought prospective relief, and *Stop the Beach Renourishment*, *Palazzolo,* and *Lucas* originated in state court. Neither of those situations applies here, as Heights chose to bring its claims in federal court in the first instance and this Court has already

11

decided that its prospective claims were mooted by the recission of the Orders so that only the damages remedy remains. (App. 92.)

Heights' reliance on dicta from *First English Evangelical Lutheran Church v. County of Los Angeles* is similarly misplaced. This Court has rejected the argument that *First English* abrogates sovereign immunity. *Church*, 913 F.3d at 747. Critiquing the plaintiffs' reading of *First English* as "too broad," the *Church* court held that the State of Missouri retained sovereign immunity from the plaintiffs' Sixth Amendment claims, notwithstanding the characterization of that constitutional right as "self-executing." *Id*. *See also City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 714 (1999) (questioning whether *First English* dicta about sovereign immunity "retains its vitality"). This Court should likewise reject Heights' reading of *First English*. The district court properly granted judgment on the pleadings to Appellees.

## II.  THE FOURTEENTH AMENDMENT DID NOT ABROGATE THE STATE'S SOVEREIGN IMMUNITY.

Federal courts have roundly rejected Heights' argument that the ratification of the Fourteenth Amendment, by itself, abrogated state sovereign immunity. *Smith v. Kentucky*, 36 F.4th 671, 677 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 213 (2022). The Fourteenth Amendment simply did not abrogate sovereign immunity, nor did states waive their immunity by ratifying the amendment. *Id*.; *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 734 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 527 (2022)

12

(rejecting argument that Fourteenth Amendment abrogated Eleventh Amendment immunity as "meritless").

Although it is true that the Fourteenth Amendment "fundamentally altered the balance of state and federal power struck by the Constitution," any effect it has on sovereign immunity depends on subsequent legislation by Congress. *Seminole Tribe of Fla. v. Fla*., 517 U.S. 44, 59 (1996) (finding that Indian Gaming Act was not valid abrogation of sovereign immunity). *See also Quern v. Jordan*, 440 U.S. 332, 342 (1979) (cautioning against "leap[ing]" to the "conclusion that Congress intended by the general language of the [the Civil Rights Act of 1871] to overturn the constitutionally guaranteed immunity of the several States."). "Importantly, the Supreme Court has held that the Fourteenth Amendment itself does not abrogate sovereign immunity merely through its ratification by the states; rather, Congress may 'carve out' such an exception via statutes promulgated under its enforcement authority." *Smith*, 36 F.4th at 677 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 451–52, (1976)). *See also Klingler v. Dir., Dep't of Revenue, State of Mo*., 455 F.3d 888, 893 (8th Cir. 2006) (recognizing that Section 5 "allows Congress to abrogate sovereign immunity to enforce that amendment's provisions.").

Heights implicitly acknowledges that Congress has not enacted legislation to allow its claims. (App. Br. at 16.) Heights' suggestion that the Court can overlook that step is contrary to decades of Supreme Court precedent that has spelled out the

13

precise conditions under which Congress can exercise its Fourteenth Amendment authority. Congress' power under the Fourteenth Amendment is the "power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. Amend. 14, §5. *City of Boerne*, 521 U.S. at 519 ("The Fourteenth Amendment's history confirms the remedial, rather than substantive, nature of the Enforcement Clause."). Sovereign immunity can be abrogated "[w]hen Congress enacts appropriate legislation," and not until then. *Alden*, 527 U.S. at 756; *Church*, 913 F.3d at 747 (recognizing that Congress can create a "statutory enforcement mechanism" to enforce the Fourteenth Amendment). To exercise its enforcement power, "Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations." *Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 43 (2012). Without such legislation (which Heights acknowledges does not exist), the Fourteenth Amendment does not authorize federal courts to hear Heights' takings claim.

Heights' suggestion that sovereign immunity for takings was abrogated in the "plan of the [Constitutional] Convention" is also incorrect. As the Supreme Court has made clear, the circumstances in which states consented to waive sovereign immunity in the "plan of the [Constitutional] Convention" are narrow. *Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455, 2462 (2022) (finding "plan of the Convention" immunity waiver in USERRA based on federal government's

14

constitutional authority to raise armies). They include the creation of a national bankruptcy system, the exercise of federal eminent domain over state lands, and the raising of armies. *Id*. *See also Skatemore*, 40 F.4th at 735 (rejecting argument that state waived sovereign immunity for private takings claims in "plan of the Convention"); *Wright-Gottshall v. New Jersey*, No. 3:21-CV18954-PGS-DEA, 2023 WL 3183288, at *7 (D.N.J. May 1, 2023) (applying sovereign immunity because constitutional challenge to COVID testing "does not even remotely fall within any recognized class of suits to which States consented under the plan of the Convention."). The Fifth Amendment could not possibly have been a "plan of the Convention" waiver because, as Heights concedes, the Fifth Amendment originally applied only to the federal government. (App. Br. 14.)

III. **HEIGHTS' ARGUMENT THAT ITS DAMAGES CLAIM WAS BROUGHT "DIRECTLY" UNDER THE FIFTH AMENDMENT IS BOTH FORFEITED AND UNSUPPORTED.**

Heights also seeks to recast its takings claim as a direct action under the Fifth Amendment, a claim that is neither cognizable nor properly before this Court. (App. Br. at 13-14.) As an initial matter, Heights forfeited its argument that the Fifth Amendment provides a direct cause of action because that theory was not briefed or argued below. This Court "will not ordinarily consider arguments raised for the first time on appeal" unless review is necessary "to prevent a miscarriage of justice." *Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,

15

847 F.3d 594, 598 (8th Cir. 2017) (internal quotations omitted). *United States v. Nunez-Hernandez*, 43 F.4th 857, 859 (8th Cir. 2022) (noting that Eighth Circuit is a court of "review, ... not first view" and holding that argument not made in the district court was forfeited). Although Heights pleaded separate counts under the Fifth Amendment and § 1983, it never argued that its money damages claim was separately cognizable under the Fifth Amendment itself, and it characterized its claim as a § 1983 action "alleging violations of the Fifth Amendment Takings clause." (Pl. Mem. Opp. Judgment on Pl., Appellees' Appendix at 8-10, R. Doc. 71, at 7-9). The district court analyzed Heights' claim "an action under Section 1983." (Add. 9.) There is no "miscarriage of justice" in requiring Heights, which was represented by counsel at every stage of these proceedings, to have presented its "direct action" argument to the district court in the first instance.

In any event, this Court should reject Heights' argument "no legislation is needed" to authorize its takings claim (App. Br. at 14), because *Knick* itself recognized that a plaintiff whose property has been taken without just compensation "may bring his claim in federal court under § 1983 at that time." *Knick*, 139 S. Ct 2162 at 2168 (2019). "[T]here is no express cause of action under the Takings Clause…" *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 n 12 (2020) (recognizing that takings claims against the federal government are actionable under the Tucker Act). The U.S. Supreme Court has generally been

16

reluctant to read private rights of action into the Constitution, allowing claims against the federal government only when authorized by statute or in the *Bivens* context. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020).[5]

Rather, as the federal courts of appeals have generally held, "Section 1983 is the exclusive remedy for constitutional violations" by state and local government actors. *Smith*, 36 F.4th at 675. *See also Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) (holding that plaintiffs were not required to cite § 1983 in their complaint to seek damages for violations of constitutional rights). Heights does not (and could not) challenge the well-established rule that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Glasgow v. Nebraska*, 819 F.3d 436, 441 (8th Cir. 2016) (quoting *Will*). That rule precludes relief here, as Heights' takings claim was necessarily brought under § 1983.

## CONCLUSION

Heights' damages claim against Appellees is barred by the Eleventh Amendment. This Court has routinely affirmed the dismissal of similar claims. It should do so again here, and affirm the district court's grant of judgement on the pleadings.

---

[5] The Supreme Court recently granted certiorari to decide if a non-statutory cause of action exists under the Takings Clause. *See Devillier v. Texas*, 22-913, *cert. granted*, --- S. Ct. ----, 2023 WL 6319651 (Sept. 29, 2023).

Appellate Case: 23-2686     Page: 25     Date Filed: 10/24/2023 Entry ID: 5328898

Dated:  October 23, 2023       Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


/s/Michael Goodwin
MICHAEL GOODWIN
Assistant Attorney General
Atty. Reg. No. 0390244

LIZ KRAMER
Solicitor General
Atty. Reg. No. 0325089

445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1456 (Voice)
(651) 296-7438 (Fax)
michael.goodwin@ag.state.mn.us
liz.kramer@ag.state.mn.us

ATTORNEYS FOR APPELLEES

18

## CERTIFICATE OF COMPLIANCE
## WITH FRAP 32

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,065 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.


/s/ Michael Goodwin
MICHAEL GOODWIN
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE**
**WITH 8th Cir. R. 28A(h)(2)**

The undersigned, on behalf of the party filing and serving this brief, certifies that the brief has been scanned for viruses and that the brief is virus-free.

**/s/ Cole M. Werner**

COLE M. WERNER

Appellate Case: 23-2686    Page: 28    Date Filed: 10/24/2023 Entry ID: 5328898